AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Deshaun Thompson | ) | Case No. 3:19 mj 103 |
| | ) | |
| | ) | MICHAEL J. NEWMAN |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____2/21/19_____ in the county of _____Montgomery_____ in the

_____Southern_____ District of _____Ohio_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846 and 84l(b)(l)(C) | Conspiracy to possess with intent to distribute a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

_Patro a Bell_
Complainant's signature

TFO Patrick Bell, FBI
Printed name and title

Sworn to before me and signed in my presence.

Date: __2/22/19__

_M. Newman_
Judge's signature

City and state: _____Dayton, Ohio_____

Michael J. Newman, U.S. Magistrate Judge
Printed name and title

**AFFIDAVIT**

Patrick A. Bell, hereinafter referred to as the "Affiant", being duly sworn, deposes as follows:

**INTRODUCTION**

1.    Your Affiant is a Task Force Officer with the United States Federal Bureau of Investigation (FBI) within the meaning of 21 U.S.C. § 878. That is, an officer of the United States who is empowered by law to conduct criminal investigations of and to make arrests for offenses enumerated in 21 U.S.C. § 878. The information contained in this Affidavit is either personally known by your Affiant or relayed to him by other law enforcement officers involved in subject investigation.

2.    Your Affiant is a law enforcement officer and has been employed as such for the past seventeen years. Since March 2013, your Affiant has been assigned to the FBI Dayton Field Office as a Task Force Officer (TFO). Since 2001, your Affiant has been employed as a sworn police officer with the City of Dayton, Ohio. Since 2008, your Affiant has been assigned to the investigation of narcotics and weapons offenses. As such, your Affiant has been involved in narcotics related arrests, executed search warrants that resulted in the seizure of narcotics, participated in undercover narcotics purchases, and supervised the activities of informants who have provided information and assistance resulting in narcotics purchases.

3.    This affidavit is made in support of an application for a federal arrest warrant and complaint against **DASHAWN L. THOMPSON (THOMPSON), KEPRECE D. RENDER (RENDER),** and **ADAM W. JOHNSON (JOHNSON)** for violations of 21 U.S.C. §§ 846 and 841(b)(1)(C) (conspiracy to distribute and possess with intent to distribute controlled substances) and for a violation of 18 U.S.C. § 111(a)(1) (assaulting, resisting, or impeding certain officers or employees). The information contained in this Affidavit is largely based upon an investigation conducted by your Affiant and other law enforcement officers. All of the details of the investigation are not included in this Affidavit, rather only information necessary to establish probable cause of the above-described violations.

**FACTS**

4.    In December 2018, members of the Federal Bureau of Investigations Southern Ohio Safe Streets Task Force (SOSSTF) initiated an investigation into the drug trafficking and violent criminal activities of **RENDER** and other known and unknown associates.

5.    During this investigation members of the task force identified the residence of **RENDER** and a known associate, **THOMPSON**, as 1958 Evangeline Drive in Miami Township, Ohio. Task Force Officer Patrick Bell had conducted surveillance on multiple occasions and seen both **RENDER** and **THOMPSON** as the only individuals to enter the residence by using a key and without knocking before entering. Task Force Officer Bell had also

seen both individuals make suspected car to car drug transactions after leaving this residence on multiple occasions.

6.    On February 21, 2019, members of SOSSTF conducted an operation with the assistance of the Dayton Police Department and an airplane from the Department of Homeland Security. During this operation Task Force Officer Bell along with the airplane conducted surveillance on 1958 Evangeline Drive. During this surveillance, Homeland Security Agents in the airplane watched as a Black Ford Expedition with dark tint and Michigan license plate, DXB7085, (the Suspect Vehicle) pulled up in front of the residence and the driver, later identified as **JOHNSON**, exited and went inside. A few minutes later **JOHNSON**, a black male later identified as **RENDER**, and **THOMPSON** exited the residence and got into the Suspect Vehicle. **JOHNSON** got in the driver's seat, **RENDER** got in behind the driver, and **THOMPSON** got in the front, passenger seat. The Suspect Vehicle then left the area and went directly to the Menards parking lot at 8420 Springboro Road.

7.    At this point aerial surveillance watched the Suspect Vehicle pull into a parking place in the lot at Menards. At this point a white female approached the Suspect Vehicle and, based on observers' training and experience, a suspected drug transaction took place. The Suspect Vehicle left the lot and headed directly to I-75 north. There were Dayton Police cruisers staging in the area to attempt a traffic stop on the Suspect Vehicle for observed window tint violations. As the Suspect Vehicle approached the Edwin C. Moses exit on Interstate 75 North, Dayton Police Officers Mike Saylors and Corey Cagle got behind the Suspect Vehicle and attempted a traffic stop by turning on their overhead lights and siren. The Suspect Vehicle failed to pull over and fled at a high rate of speed northbound and onto Route 35 westbound. the Suspect Vehicle continued to flee at a high rate of speed into Trotwood, passing vehicles and running through red lights even though no police vehicles were behind it. The aerial surveillance watched the Suspect Vehicle for approximately two hours while it traveled into Preble County and almost to the Indiana/Ohio border. At one point, there was a law enforcement cruiser ahead of the Suspect Vehicle and the Suspect Vehicle turned around and fled in the other direction at speeds in excess of one hundred miles per hour, once again running blindly through stop signs. The Suspect Vehicle then traveled in to Franklin, Ohio and into Middletown, Ohio before getting back on Interstate 75 and exiting at Route 63 in Monroe.

8.    Upon exiting on Route 63, the Suspect Vehicle pulled into the parking lot at the Cincinnati Premium Outlet at 400 Premium Outlet Drive. The Suspect Vehicle pulled into the parking lot and aerial surveillance watched **JOHNSON, RENDER,** and **THOMPSON** exit the Suspect Vehicle and walk into the mall area. Due to it being an outdoor mall, aerial surveillance watched as **RENDER** and **THOMPSON** separated from **JOHNSON** once they entered the mall area. Task Force Officers Fred Zollers and Pat Craun went into the mall as well and saw both **RENDER** and **THOMPSON** walking through the mall with the same clothes that they were wearing when they left the residence. They then watched both suspects enter the Nike store. **RENDER** and **THOMPSON** exited the Nike store a short time later, but the two individuals were now wearing different clothes and carrying red

2

bags. At this point, Dayton detectives and task force officers entered the mall to take them into custody. Task Force Officers Dustin Phillips and Jason Rhodes saw **JOHNSON** walking through the mall and took him into custody. Dayton Detectives Jacob Rillo, Matt Gray, and Jeremy Reeb along with Task Force Officer Bell were able to contact **THOMPSON** and **RENDER** and take them into custody as well. On search incident to arrest, **RENDER** was found in possession of three cellular phones and $1,075.00 of United States currency. **THOMPSON** was found to be in possession of five cell phones, $861.00 of United States currency, and ten tablets of suspected Oxycodone.

9. After securing all three suspects, task force officers returned to the Suspect Vehicle. A tow was requested for failure to comply with lawful order of a police officer. As Dayton Police Officer Tyler Orndorff approached the driver's side of the vehicle, he saw a large baggie of suspected Fentanyl laying a few feet from the vehicle. TFO Zollers opened the baggie and located two separate baggies, one weighing approximately 29 grams and a second baggie containing 42 gel capsules of suspected Fentanyl. Zollers then performed a field test on the substance and received a positive result for Fentanyl. Task Force Officers then performed an inventory search on the Suspect Vehicle. Detectives recovered a baggie of empty gel caps in the back seat along with multiple boxes of baggies and a flip phone in the center console. Based on Affiant's training and experience, these items are consistent with drug trafficking.

10. All three suspects were transported to the Dayton Police Department safety building to be interviewed while TFO Zollers prepared a search warrant for 1958 Evangeline Drive. TFO Braun and TFO Gaier first interviewed **THOMPSON**. **THOMPSON** admitted to residing at 1958 Evangeline Drive. **THOMPSON** admitted to being in the Menards' parking but stated he did not see what the other occupants of the vehicle did with the female who approached their car. Upon being questioned more about the apartment, **THOMPSON** requested an attorney. **THOMPSON**'s interview was then concluded. **JOHNSON** declined to talk with TFO Braun and TFO Gaier and requested an attorney. **RENDER** agreed to speak with TFO Braun and TFO Gaier without an attorney present. **RENDER** discussed details of the events involving **JOHNSON** refusing to stop for police leading up to the arrest at the Cincinnati Premium outlet mall. **RENDER** admitted to discarding the bag of suspected Fentanyl underneath a car parked next to the Expedition. **RENDER** stated that **JOHNSON** handed him the suspected Fentanyl and told him (**RENDER**) to get rid of it. **RENDER** also admitted to staying at 1958 Evangeline Drive with **THOMPSON**.

11. TFO Zollers completed a search warrant and affidavit for 1958 Evangeline Drive. The warrant was reviewed and signed by Honorable Montgomery County Common Pleas Judge Mary Kate Huffman on February 21, 2019 at 3:49 p.m. Upon searching the residence, the following evidence was found: in one bedroom identified as **THOMPSON**'s there were multiple items of clothing that **THOMPSON** has been seen wearing on Facebook, a baggie of suspected drugs, weighing approximately 25 grams, from a shelf in the closet, another baggie of suspected drugs from a shoe in the closet, a digital scale from a bag in the closet, and $5,045.00 of United States currency. Additionally, in the bedroom identified as **RENDER**'s, there was a shoebox located on the floor containing suspected drugs, which

weighted approximately 25 grams. All items were taken as evidence. The suspected drugs were sent to the Miami Valley Regional Crime Laboratory for analysis.

12.     Based upon the facts set forth in the Affidavit, your Affiant believes there is probable cause to believe that in the Southern District of Ohio, **KEPRECE D. RENDER**, **DASHAWN L. THOMPSON**, and **ADAM W. JOHNSON** knowingly and intentionally conspired with each other to knowingly and intentionally distribute and possess with intent to distribute controlled substances, namely a mixture or substance containing a detectable amount of Fentanyl, a schedule II controlled substance. Further, your Affiant believes there is probable cause to believe that in the Southern District of Ohio, **ADAM W. JOHNSON** did resist, oppose, impede and interfere with any officer or employee of the United States while engaged in or on account of the performance of official duties in violation of 18 U.S.C. § 111(a)(1).

_____

Patrick A. Bell, Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to before me this 22nd day of February, 2019.

_____

MICHAEL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

4